# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08cv602-RJC-DSC

| | |
|---|---|
| JOSEPH STRASZHEIM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)         **ORDER**<br>GERDAU AMERISTEEL U.S., INC., )<br>)<br>Defendant. )<br>) | |

**THIS MATTER** is before the Court on the defendant's motion for summary judgment and the parties' corresponding briefs (Doc. Nos. 14 through 17, 23, & 26). For the reasons set forth below, the Court will **GRANT** the defendant's motion.

## I. BACKGROUND

Gerdau Ameristeel U.S., Inc. ("Gerdau") operates multiple steel mills and finishing and fabrication facilities, including the Charlotte facility where plaintiff Joseph Straszheim worked ("the Charlotte Mill"). Gerdau hired Straszheim, an American, as a Maintenance Mechanic on January 26, 2004, when he was fifty-two years old. Straszheim had previously applied for the higher-level Electronic Technician ("ET") position with Gerdau in 2003, but he did not receive the position. Throughout the plaintiff's employment with Gerdau, which continues to this day as far as the Court has knowledge, he has generally performed the technical aspects of his maintenance position satisfactorily. Straszheim was promoted from Maintenance Mechanic to General Maintenance Mechanic in 2006, and he was recommended by management for the Master Maintenance Mechanic position in 2006.

In 2007, Gerdau posted a notice on bulletin boards throughout the Charlotte Mill that it would be hiring someone to fill an open ET position. The notice stated: "Anyone interested in bidding on this job should complete a Job Bid form and place it in one of the Job Bid Boxes by 4:00 p.m. Thursday, 03/22/07." (Doc. No. 23 at 5). Straszheim submitted a Job Bid form four days after the posted deadline, but Gerdau allowed him to interview for the ET position. In addition to the plaintiff, Gerdau considered Jorge Mesquita, age thirty-eight, and Jack Gibson, age thirty-nine, for the position. Mesquita and Gibson, like Straszheim, worked as General Maintenance Mechanics in the Charlotte Mill.

Gerdau's promotion process and the ET job posting required the candidates' qualifications to be evaluated. Specifically, the candidates were scored on the following promotion factors, which are assigned a specific weight: (1) job performance (15%); (2) disciplinary record (15%); (3) attendance/tardiness (15%); (4) job-related knowledge – based on objective written exam (15%); (5) job-related knowledge – based on an interview (15%); (6) communication skills – based on an interview (10%); and (7) initiative – based on an interview (15%).

First, Human Resources ("HR") reviewed the three candidates' personnel records, arranged for them to take the written exam, and determined each applicant's score for the job performance, disciplinary record, attendance/tardiness, and test-based job-related knowledge factors. Straszheim received the highest score of the three applicants on the written test. Straszheim and Mesquita were given identical scores on the job performance, disciplinary record, and attendance/tardiness factors.

Each applicant was next interviewed by a panel ("the Panel") of three Americans: hiring supervisor Paul Herger (age thirty-three), manager Charlie Blubaugh (age forty-four), and supervisor Kaleb Fitch (age twenty-six). The Panel asked form questions that had been prepared prior to the

2

interviews and asked the same questions to each applicant. After each interview, each Panel member independently assessed the candidates based on the remaining promotion factors of job-related knowledge, communication skills, and initiative. The Panel members scored these factors based on a rating scale of "below," "meets," and "exceeds" expectations, which terms were then assigned a numerical weight for tallying purposes.

For each of these three remaining factors, the Panel rated Straszheim as "below expectations." Individual panel members' interview notes and affidavits disclose multiple independent reasons for these low ratings. Regarding "communication skills," Herger noted that the plaintiff's answers were not responsive to the questions asked. Both Herger and Blubaugh questioned Straszheim's ability to clearly recommend solutions to maintenance supervisors and engineers. Regarding "initiative," he received a uniformly low rating by each independent interviewer. As to "job-related knowledge," Herger rated Straszheim's answers to six of the ten questions as either "bad" or "poor," while Blubaugh found that Straszheim had answered component questions incorrectly. Mesquita, on the other hand, received a "meets expectations" rating for each of the three factors considered by the Panel. Each individual Panel member's notes and affidavit discloses various plausible reasons for Mesquita's positive ratings.

The Panel provided the scores to HR, which then tallied the candidates' overall scores out of 100%. Mesquita received the highest (77.32%), Gibson received the second-highest (76.21%), and Straszheim received the lowest (70.93%). These scores were presented to the Promotion/Selection Committee ("the Committee") for review. The Committee, all of whom were American, consisted of Marie Gilmore of HR (age sixty-four), Herger, Blubaugh, and Thomas Taborek of HR. The Committee reviewed the results of the promotion process and approved Mesquita for promotion

3

to the ET position. The defendant informed Straszheim that he had not been selected for the position because he lacked the computer knowledge they sought in a successful ET. Gerdau announced on May 4, 2007 that Mesquita had received the position.

On June 12, 2007, Straszheim filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging failure to train and failure to promote him to the ET position based on age and national origin. Straszheim was issued a right to sue letter on October 1, 2008. He timely filed suit in federal court on December 23, 2008. The complaint alleges multiple claims, including failure to promote and failure to train based on age in violation of the Age Discrimination in Employment Act ("ADEA"), as well as failure to promote and failure to train based on national origin in violation of Title VII, Section 1981, and North Carolina public policy as set forth in the North Carolina Equal Employment Practices Act ("NCEEPA").

## II. LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Straszheim, in his response to the Gerdau's motion for summary judgment, failed to address the defendant's arguments regarding the following claims: (1) failure to promote based on the plaintiff's national origin in violation of Section 1981, and (2) failure to train based on the plaintiff's age and national origin in violation of Section 1981, Title VII, the ADEA, and the NCEEPA. In failing to respond to Gerdau's well-argued position in favor of these claims' dismissal, Straszheim has waived these claims. See Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (citing Reid v. Albemarle Corp., No. Civ.A. 96-7564-A-1, 2002 WL 31526451, at *1 (M.D. La. June 26, 2002); Toney v. Rosewood Care Ctr., Inc., No. 98C693, 2001 WL 1105127, at *5 (N.D. Ill. Sept. 20, 2001); Ostergren v. Vill. of Oak Lawn, 125 F. Supp. 2d 312, 323 (N.D. Ill. 2000)). Consequently, the Court will enter summary judgment on these claims.

Straszheim's response to the defendant's motion for summary judgment focuses upon his age and national origin discrimination claims related to his May 2007 non-promotion to the ET position in alleged violation of Title VII, the ADEA, and the NCEEPA. The Court will, therefore, address only these contested claims.

**A. The NCEEPA claim for non-promotion to the ET position**

The plaintiff asserts a claim under North Carolina law for discriminatory failure to promote in violation of the NCEEPA. The NCEEPA's public policy statement sets forth that the State of North Carolina seeks "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap . . . ." N.C. Gen. Stat. § 143-422.2. North Carolina courts have long recognized that the NCEEPA's public policy declaration may support a wrongful discharge claim. See Jarman v. Deason, 618 S.E.2d 776, 779 (N.C. 2005) (Greer, J., concurring) ("This Court has repeatedly recognized that the EEPA may form the basis for a wrongful discharge claim."). However, North Carolina courts have not recognized a private right of action under the NCEEPA for a claim of promotion discrimination. Therefore, since the North Carolina courts have not recognized a private right of action under the NCEEPA for discriminatory failure to promote, the plaintiff has failed to state a claim under state law. See First Investors Corp. v. Citizens Bank, Inc., 757 F. Supp. 687, 691 (W.D.N.C. 1991) (refusing to expand or create North Carolina common law where no court of the State had interpreted the statute as broadly as plaintiff sought).

**B. The Title VII and ADEA claims for non-promotion to the ET position**

Straszheim asserts his Title VII and ADEA claims under the pretext framework, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), rather than the mixed-motive

6

framework. However, regardless of the framework used and whether a plaintiff puts forth direct or circumstantial evidence, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000).

The McDonnell Douglas framework applies to both the plaintiff's Title VII national origin claim as well as his age discrimination claim under the ADEA. See EEOC v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004) ("An ADEA claim may be established through . . . a 'pretext' framework identical to the McDonnell Douglas burden-shifting analysis used in Title VII cases.") (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc)). Under the three-step McDonnell Douglas framework, the plaintiff must first establish a prima facie case of employment discrimination. 411 U.S. at 802. If the plaintiff provides credible evidence establishing a prima facie case, then there is a presumption of discrimination. At the second step, the burden shifts to the defendant to provide some legitimate nondiscriminatory reason for its employment decision. Id. If the employer provides a nondiscriminatory reason for its decision, the Court then looks to the third step of the standard, shifting the burden back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is pretextual. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If a plaintiff fails to establish a prima facie case of discrimination or later fails to raise a material factual dispute concerning the employer's non-discriminatory reason for the alleged discriminatory act, then the defendant is entitled to summary judgment. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

The Court assumes, without deciding, that Straszheim has put forth sufficient evidence to sustain a prima facie case of both age and national origin discrimination. Moving to the second step of the McDonnell Douglas framework, the defendant has offered a nondiscriminatory reason for promoting Mesquita rather than Straszheim. Gerdau provides uncontroverted evidence that Mesquita received the highest overall score of the three employees who applied for the ET position and that Strazheim received the lowest. Straszheim must then point to evidence proving by a preponderance that the defendant's reason for promoting Mesquita rather than him was pretextual.

The plaintiff has failed to put forth sufficient evidence of pretext regarding his age discrimination claim. Straszheim admitted in his deposition that he had never heard a manager at the Charlotte Mill comment negatively about a person's age. In addition, Gerdau hired the plaintiff when he was fifty-two years old. Further, two Committee members were over forty: Blubaugh was forty-four, and Gilmore was sixty-four. Finally, Straszheim was allowed to apply for the position despite missing the application deadline. The plaintiff's subjective belief that age played a role in his failure to receive the promotion falls far short of the proof required to show pretext. Further, the mere fact that Mesquita was thirty-eight years old when he received the position is not enough to prove by a preponderance of the evidence that Gerdau's reason for failing to promote Straszheim was a pretext for age discrimination. Without more, the plaintiff has failed to prove pretext regarding his ADEA claim.[1]

---

[1] Straszheim also cites a prior "fair" rating received by Mesquita in a 2005 post-hire, 45-day performance appraisal. The Court does not consider this evidence, as a prior evaluation in a different position only forty-five days after hiring is far from interchangeable with the promotion/selection criteria for the ET position. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005). As the Fourth Circuit has stated,

> the performance evaluation is a review of an employee's performance in her current position, while the process of selecting a person for a promotion involves a consideration of how that employee will perform in a different position. In other words, the performance evaluation and the interview selection

Straszheim has also failed to prove pretext regarding his Title VII claim. The plaintiff does not directly argue that any of the defendant's actions were a pretext for national origin discrimination. While he points to the alleged subjective focus of the interview process as problematic, Straszheim does not show how the specific and largely objective questions asked by the interviewers were a pretext for discrimination. Further, Straszheim has put forth no evidence to contradict the affidavits of the defendant's employees, who assert that they were never aware that Mesquita's nationality was anything other than American.[2] See (Doc. Nos. 15-34 at ¶ 24, 16-4 at ¶ 13). Such uncontroverted evidence of nondiscrimination falls short of proving even a prima facie case of national origin discrimination, much less pretext. Cf. Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995) (collecting disability cases observing that an employer without knowledge of a disability cannot take an adverse action based on the disability). In light of the

---

> stage, which involves an analysis of how the applicant meets the core and functional competencies of the position that is open, are not interchangeable. We do not sit as a "super-personnel department weighing the prudence of employment decisions" made by the defendants. DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998). We cannot require that different supervisors within the same organization must reach the same conclusion on an employee's qualifications and abilities.

Id.

[2] Fitch's statement is telling:

> Mr. Mesquita has no speech, mannerisms, or appearance unique to a particular national origin group. Mr. Mesquita speaks fluent English without an accent, and he has never indicated to me that his national origin is anything other than American. In fact, prior to this lawsuit, I had no idea that Mr. Straszheim's national origin is, in fact, American, though, like Mr. Mesquita, I had no reason to believe otherwise.

(Doc. No. 16-4 at ¶ 13). Straszheim asserts in the complaint that, "[u]pon information and belief, Mr. Mesquita . . . was born in and is a native of Portugal." (Doc. No. 1 at ¶ 11). While the Gerdau admits in the answer that, "upon information and belief, Mr. Mesquita is a native of Portugal and was born in Portugal," (Doc. No. 6 at ¶ 11), the record makes clear that the Panel and the Committee, all Americans, were unaware of Mesquita's nationality. Straszheim fails to contradict this lack-of-knowledge evidence with an affidavit, deposition testimony, or otherwise.

record, the Court finds no evidence that Gerdau's nondiscriminatory reason for promoting Mesquita rather than Straszheim was a pretext for national origin discrimination.

**IV. CONCLUSION**

**IT IS, THEREFORE, ORDERED** that the defendant's motion for summary judgment (Doc. No. 17) is **GRANTED**.

**SO ORDERED**.

Signed: March 5, 2010

Robert J. Conrad, Jr.
Chief United States District Judge